Filed 10/5/16  P. v. Lara CA2/4
On remand

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B258181 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. GA072069) |
| v. | |
| DANIEL JOSEPH LARA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Larry Paul Fidler.  Affirmed and remanded with directions.

Alex Green, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

_____

# INTRODUCTION

This matter is before us following remand from the California Supreme Court. Appellant Daniel Joseph Lara was 17 years old when he engaged in four separate gang-related shootings. A jury convicted him of three counts of attempted murder, and he was sentenced to 40 years to life in prison. He appealed, arguing that the sentence violated the Eighth Amendment's prohibition against cruel and unusual punishment, as it was effectively a sentence of life without the possibility of parole (LWOP). We affirmed the sentence, holding that it did not violate the Eighth Amendment, as appellant's life expectancy exceeds his minimum parole period by at least 19 years. We declined to address whether Penal Code section 3051 also would render the sentence constitutional. (See *People v. Lara* (Sept. 17, 2015, B258181) [nonpub. opn.].)[1]

The Supreme Court granted review, and stayed the matter pending its decision in *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*). Thereafter, in *Franklin*, the Supreme Court held that section 3051 moots a juvenile defendant's constitutional challenge to a mandatory LWOP sentence. (*Id*. at p. 268.) Because the defendant there was sentenced before section 3051 was enacted, the court remanded the matter to the trial court "for the limited purpose of determining whether [appellant] was afforded an adequate opportunity to make a record of information that will be relevant to the Board [of Parole Hearings (board),] as it

---

[1]     With respect to appellant's case, Penal Code section 3051, subdivision (b)(3) provides: "A person who was convicted of a controlling offense that was committed before the person had attained 23 years of age and for which the sentence is a life term of 25 years to life shall be eligible for release on parole by the board during his or her 25th year of incarceration at a youth offender parole hearing, unless previously released or entitled to an earlier parole consideration hearing pursuant to other statutory provisions."

All further statutory citations are to the Penal Code, unless otherwise stated.

fulfills its statutory obligations under sections 3051 and 4801." (*Id.* at pp. 286-287.)[2] The court vacated our prior decision, and remanded the matter for us to reconsider in light of *Franklin*.

Following the Supreme Court's order transferring the matter to this court, appellant filed a supplemental brief, arguing that the matter should be remanded to the trial court for the limited purpose set forth in *Franklin*. The attorney general submitted no response. Pursuant to *Franklin*, we conclude that appellant's constitutional challenge to his sentence is moot. Because appellant was sentenced prior to the enactment of section 3051, we will remand the matter to the trial court for the limited purpose of determining whether appellant was afforded an opportunity to make a record of information relevant to a youth offender parole hearing. If the trial court determines he did not have a sufficient opportunity to present such information, both appellant and the prosecution may submit any relevant evidence. (See *Franklin*, *supra*, 63 Cal.4th at p. 284.) Accordingly, we affirm the judgment and remand the matter for further proceedings consistent with this opinion.

---

[2] Section 4801 generally provides that the board "may report to the Governor . . . the names of any and all persons imprisoned in any state prison who, in its judgment, ought to have a commutation of sentence or be pardoned and set at liberty on account of good conduct, or unusual term of sentence, or any other cause . . . ." (§ 4801, subd. (a).) Subdivision (c) of that section further provides: "When a prisoner committed his or her controlling offense, as defined in subdivision (a) of Section 3051, prior to attaining 23 years of age, the board, in reviewing a prisoner's suitability for parole pursuant to Section 3041.5, shall give great weight to the diminished culpability of juveniles as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity of the prisoner in accordance with relevant case law."

# FACTUAL BACKGROUND AND PROCEDURAL HISTORY[3]

On the evening of January 13, 2008, appellant engaged in four separate gang-related shootings. In the first incident, appellant and his fellow gang members were driving to a party located in a rival gang's territory when they noticed Lawrence Bell and several other men standing outside a house. They stopped the car in front of the house, and yelled out their gang name. After the other men denied being gang members, appellant, who was sitting in the right rear passenger seat of the vehicle, pulled out a gun and fired multiple shots at them. Bell was hit in the leg.

Appellant and his fellow gang members then drove to a location that one of them had previously "tagged" with gang-related graffiti. Someone had crossed out the graffiti, and the group wanted to remedy the "disrespect." They came upon a group of Hispanic men. After one of the men denied crossing out the graffiti, appellant opened the right rear car door and fired several shots at him. Juan Mendoza, who was standing nearby, was hit in the leg.

Appellant and his fellow gang members drove away. A few minutes later, appellant said he wanted to "finish[] off what he started." The group then stopped the vehicle, exited, and ran back to the crime scene. As appellant approached the Hispanic men, he drew his gun and fired three or four times. Hector Guzman was hit in the right arm.

After this incident, appellant and his fellow gang members drove to Old Town Pasadena to rob someone for money to buy food. They came upon a man sitting alone on a bench who stared at them. A gang member exited the vehicle

---

[3]     Because appellant does not challenge the factual basis for his convictions and raises only sentencing issues on appeal, we provide an abbreviated summary of the facts and procedural history.

and assaulted the man. Appellant also exited the car, and fired a shot at the victim. The two gang members then got back into the vehicle and fled.

Appellant was later arrested and charged with the offenses. A jury convicted him of the attempted premeditated and deliberate murders of Bell, Mendoza, and Guzman. It also convicted him of discharging his firearm at Mendoza from a motor vehicle, and discharging a firearm in a grossly negligent manner at a dwelling. Finally, the jury also found true the related gang and gun enhancement allegations.

The parties briefed sentencing in light of *Graham v. Florida* (2010) 560 U.S. 48 (*Graham*) and *People v. Caballero* (2012) 55 Cal.4th 262 (*Caballero*). At the sentencing hearing, the trial court recognized that in light of appellant's age, imposition of the maximum sentence -- 120 years to life -- would contravene existing United States and California Supreme Court decisions. The court sentenced appellant to identical concurrent terms of 15 years to life on each of the attempted murder counts, plus 25 years to life for the firearm enhancement under section 12022.53, subdivision (d), for a total of 40 years to life. The court also imposed sentences on the remaining counts, but stayed those terms pursuant to section 654.

Appellant filed a timely notice of appeal.

## DISCUSSION

Under the Eighth Amendment's prohibition against cruel and unusual punishment, a juvenile convicted of nonhomicide offenses may not be sentenced to life without the possibility of parole. (*Graham*, *supra*, 560 U.S. at p. 82.) In *Caballero*, the California Supreme Court followed *Graham* and vacated a 110-year-to-life sentence imposed on a juvenile convicted of attempted murder,

5

concluding that the sentence amounted to the functional equivalent of life without the possibility of parole. (*Caballero*, *supra*, 55 Cal.4th at p. 265.) The court concluded that "sentencing a juvenile offender for a nonhomicide offense to a term of years with a parole eligibility date that falls outside the juvenile offender's natural life expectancy constitutes cruel and unusual punishment in violation of the Eighth Amendment. Although proper authorities may later determine that youths should remain incarcerated for their natural lives, the state may not deprive them at sentencing of a meaningful opportunity to demonstrate their rehabilitation and fitness to reenter society in the future." (*Id.* at p. 268.)

Following *Graham* and *Caballero*, the Legislature enacted Senate Bill No. 260 (2013-2014 Reg. Sess.) (Senate Bill No. 260), to bring juvenile sentencing into conformity with those cases. "At the heart of Senate Bill No. 260 was the addition of section 3051, which requires the Board to conduct a 'youth offender parole hearing' during the 15th, 20th, or 25th year of a juvenile offender's incarceration. (§ 3051, subd. (b).) The date of the hearing depends on the offender's "'[c]ontrolling offense,'" which is defined as 'the offense or enhancement for which any sentencing court imposed the longest term of imprisonment.' (*Id.*, subd. (a)(2)(B).) A juvenile offender whose controlling offense carries a term of 25 years to life or greater is 'eligible for release on parole by the board during his or her 25th year of incarceration at a youth offender parole hearing, unless previously released or entitled to an earlier parole consideration hearing pursuant to other statutory provisions.' (*Id.*, subd. (b)(3).)" (*Franklin*, *supra*, 63 Cal.4th at p. 277.) Thus, a juvenile offender who is entitled to a parole hearing under section 3051 has a meaningful opportunity for release. Accordingly, section 3051 moots the juvenile offender's constitutional challenge to a mandatory LWOP sentence. (*Franklin*, at p. 280.)

6

Here, appellant's controlling offense is his mandatory 25 years to life on the firearm enhancement under section 12022.53, subdivision (d). (Cf. *Franklin*, *supra*, 63 Cal.4th at p. 279 [either "mandatory term of 25 years to life under section 190 for first degree murder" or "mandatory term of 25 years to life under section 12022.53 on the firearm enhancement" "could be considered the 'controlling offense' under section 3051, subdivision (a)(2)(B)"].) Under section 3051, appellant is therefore eligible for a youth offender parole hearing in the 25th year of his incarceration, when he is 42 years old. This sentence is neither LWOP nor its functional equivalent. Accordingly, section 3051 moots appellant's constitutional challenge to his sentence.

To effectuate Senate Bill No. 260's purpose of providing a juvenile offender with a meaningful opportunity to obtain release, the *Franklin* court held that a juvenile offender is entitled to an opportunity to make a record of information relevant to his or her eventual youth offender parole hearing. Such information may include statements from "'[f]amily members, friends, school personnel, faith leaders, and representatives from community-based organizations with knowledge about the individual before the crime'" and results of "'psychological evaluations and risk assessment instruments'" when the offender was a juvenile. (*Franklin*, *supra*, 63 Cal.4th at pp. 283-284.) Because the court could not determine on the record before it whether the appellant was afforded a sufficient opportunity to present such relevant information, it remanded the matter to the trial court for "the limited purpose of determining whether Franklin was afforded an adequate opportunity to make a record of information that will be relevant to the Board as it fulfills its statutory obligations." (*Id*. at pp. 286-287.) The court further stated: "If the trial court determines that Franklin did not have sufficient opportunity, then the court may receive submissions and, if appropriate, testimony pursuant to

7

procedures set forth in section 1204 and rule 4.437 of the California Rules of Court, and subject to the rules of evidence. Franklin may place on the record any documents, evaluations, or testimony (subject to cross-examination) that may be relevant at his eventual youth offender parole hearing, and the prosecution likewise may put on the record any evidence that demonstrates the juvenile offender's culpability or cognitive maturity, or otherwise bears on the influence of youth-related factors." (*Id*. at p. 284.)

Here, appellant contends the matter should be remanded to the trial court for the limited purpose discussed above. The attorney general has filed no objection. After reviewing the record, we cannot determine, as a matter of law, whether appellant had a sufficient opportunity to present information relevant to his future youth offender parole hearing. Accordingly, we will remand the matter to the trial court for the limited purpose of determining whether appellant was afforded a sufficient opportunity to present such information. If the trial court determines he was not, both appellant and the prosecution may submit evidence in accordance with the procedure set forth in *Franklin*, discussed above. (See *Franklin*, *supra*, 63 Cal.4th at p. 284.)

## DISPOSITION

The judgment is affirmed.  The matter is remanded to the trial court for further proceedings consistent with this opinion.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.**



MANELLA, J.


We concur:


EPSTEIN, P. J.


WILLHITE, J.

9